**UNITED STATES v. BETTERIDGE et al.**

No. 17188.

District Court, N. D. Ohio, E. D.

Feb. 6, 1942.

Donald C. Miller, U. S. Atty., and Roy Scott, Asst. U. S. Atty., both of Cleveland, Ohio, for plaintiff.

Walter Vogel, of Akron, Ohio, for defendant Betteridge.

Albert C. Nozik, of Cleveland, Ohio, for defendant Wolf.

FREED, District Judge.

The defendants, Robert Cook Betteridge, Jr. and David B. Wolf are charged in two counts of this indictment with violations of 47 U.S.C.A. §§ 301–318.

The first count states in substance that these defendants within the jurisdiction of this court, between August 19, 1941, and August 21, 1941, knowingly, willfully, unlawfully and feloniously used and operated a radio transmitting apparatus for the transmission of energy, communications and signals by radio in a mobile radio station in an Oldsmobile automobile without a license obtained for that purpose under the provisions of the Act, and that by the use and operation of such apparatus and station they transmitted energy, signals and communications from within the State of Ohio to places beyond the borders of the State of Ohio, to wit: to a vessel which at the time was beyond the borders of the State of Ohio, and from within the borders of the State of Ohio to other points and that by such use and operation they interfered with the transmission or reception of interstate energy, communications and signals.

The second count recites that on the dates mentioned above the defendants knowingly, willfully, unlawfully and feloniously used and operated the above mentioned apparatus in the manner stated without obtaining radio operators' licenses in accordance with law.

The Government's evidence discloses that the defendants, for the purpose of "trying to beat the races," or rather, the people who were betting on the races, equipped a radio transmitting apparatus and parked the Oldsmobile automobile in which it was mounted on a farm adjoining the Thistledown Race Track from which the defendant, Betteridge, broadcast numbers evidently of horses leading in the stretch. The defendant, Wolf, received the information on a receiving set some distance away in a private home. The signals of the numbers broadcast were heard on a Coast Guard vessel cruising outside the breakwater in Lake Erie at Cleveland. The apparatus was a 5-meter ultra high frequency transmitter and had a 5-watt output which could transmit communications a distance of from 20 to 25 miles. The Government's witnesses testified that stations of this character, transmitting on a fre-

quency of 56 megacycles (5 meters is equal to 60 megacycles) have been heard in 35 states, and that transmitters of the type used by these defendants, under favorable conditions, can be heard at distances up to 1,000 miles. The evidence further is to the effect that the frequency used by the apparatus in question, to wit: 60.1 megacycles, was assigned exclusively to radio stations of the United States Government. There is evidence to the effect that such transmissions could not be controlled by the sender except as to volume and would transmit energy, signals and communications in radiating directions and that such transmissions would interfere with any other radio transmissions using the same frequency at the same time either from outside the State of Ohio to points within the State of Ohio or from inside the State of Ohio to points outside the State.

The evidence further discloses that neither of the defendants was issued licenses, either for operating the radio station or operators' licenses.

The defendants offered no evidence in their own behalf but contend that their acts were not in violation of the statutes. They particularly contend, in effect, that since the penalty section of the Act (47 U.S.C.A. § 501) contains the words "knowingly and willfully" the Government is required to prove that these defendants intended to send interstate or foreign energy, communications or signals, or intended to interfere with interstate or foreign energy, communications or signals of other stations. They maintain they intended to send, by the apparatus they operated, purely intrastate communications, energy and signals. They point out that the statute, being criminal, must be strictly construed.

The pertinent portions of the statute in question read as follows:

47 U.S.C.A. § 301: "License for radio communication or transmission of energy

"It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of interstate and foreign radio transmission * * *. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio * * * (c) from any place in any State, Territory, or possession of the United States * * * to any place in any foreign country or to any vessel; or (d) within any State when the effects of such use extend beyond the borders of said State, or when interference

is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States; or (f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter."

47 U.S.C.A. § 318. "Transmitting apparatus; operator's license

"The actual operation of all transmitting apparatus in any radio station for which a station license is required by this Chapter shall be carried on only by a person holding an operator's license issued hereunder, and no person shall operate any such apparatus in such station except under and in accordance with an operator's license issued to him by the Commission: * * *."

47 U.S.C.A. § 501. "General penalty

"Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, or who willfully and knowingly omits or fails to do any act, matter, or thing in this chapter required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided herein, by a fine of not more than $10,000 or by imprisonment for a term of not more than two years, or both."

No attack was made either before or at the trial as to the indictment. Although it might be clearer in reciting the specific subsections of Section 301, the violations of which are charged, nevertheless it contains allegations to charge sufficiently (1) that the transmitting apparatus was operated without a license from within the State of Ohio to a vessel; (2) that it was used and operated from within the State when interference was caused by the use and operation with the transmission of energy, communications, or signals from within the State to any place beyond its borders, and (3) that it was used and operated on a mobile station within the jurisdiction of the United States.

Section 301 points out that it is the purpose of the Chapter "to maintain the control of the United States over all the channels of interstate and foreign radio transmission."

Accordingly, in the enactment of this section, Congress sought to prohibit the operation of any apparatus for the transmission of energy, communications or signals by radio without a license in any manner that may prevent the United States from maintaining such control, and enumerated (from (a) to (f) in the section) the various uses of transmitting apparatus which would deprive the United States of the control of the channels of interstate and foreign radio communication unless they were regulated by licensing.

It is needless to go into a lengthy dissertation on the inherent natural characteristics of radio transmission to arrive at the inescapable conclusion that all transmission of energy, communications or signals by radio, either use an interstate or foreign channel of transmission or so affect interstate or foreign channels as to require the regulation of their use by licensing or otherwise if the announced purpose of this section, i. e., the retention of control in the United States of all channels of interstate and foreign radio communication, is to be carried out effectively. The daily use of the radio, even to a lay mind unacquainted with the science of radio transmission or its engineering intricacies, has clearly demonstrated this conclusion.

A careful analysis of the prohibited operations of a radio transmitting apparatus without a license discloses that the section is so all-inclusive that it would require great imaginative faculty to find an instance where the operation of a transmitting apparatus would not be embraced within the provisions of the Act. In fact, I am bound to come to the conclusion that all the operations of a radio transmitting apparatus fall into one or the other or several subsections of the statute and that under the Act, none can operate without a license.

In the instant case the signals transmitted by the defendants were heard on a United States Coast Guard vessel. 47 U.S.C.A. § 153, defines a vessel as: "(w) (1) 'Ship' or 'vessel' includes every description of watercraft or other artificial contrivance, except aircraft, used or capable of being used as a means of transportation on water, whether or not it is actually afloat."

Thus the operation here in question would be a clear violation of the provisions of subsection (c) of Section 301.

The strained construction which the defendants seek to give to the language of the subsection, that the words "any vessel" mean "any foreign vessel," would add language to the statute which it does not contain.

It is apparent from the conclusion reached above that the acts of the defendants likewise were in violation of subsection (d) of Section 301.

Their acts also offended subsection (f) reading: "* * * upon any other mobile stations within the jurisdiction of the United States * * *." Mobile station is defined in 47 U.S.C.A. § 153, in paragraph (*l*) which reads: " 'Mobile station' means a radio-communication station capable of being moved and which ordinarily does move * * *."

There can be no question that the transmitting apparatus here used being mounted on an automobile was a mobile station within the meaning and definition of Section 153.

The defendants' contentions that the Government under this indictment must prove that they intended their transmissions to go to a certain place in another state are untenable. It is true that criminal statutes must be strictly construed.

The strict construction of a criminal statute does not mean such construction of it as to deprive it of the meaning intended. Penal statutes must be construed in the sense which best harmonizes with their intent and purpose. To say, as the defendants contend, that because of the words "willfully and knowingly," the Government must prove that the parties charged intended interstate or foreign radio transmission would give meaning to words not intended by the statute. The words "willfully and knowingly" in the statute mean the purposeful and deliberate failure to comply with the licensing provisions of the Act.

It is a well known axiom of law that every person presumes to intend the natural and probable consequences of his voluntary acts. Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173 and United States v. Patten, 226 U.S. 525, 543, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325. In Whitehurst v. Grimes, D.C., 21 F. 2d 787, the Court held that: "Radio communications are all interstate. This is so, though they may be intended only for intrastate transmission; and interstate transmission of such communications may be seriously affected by communications intended only for intrastate transmission. Such communications admit of and require a uniform system of regulation and control throughout the United States, and Congress has covered the field by appropriate legislation. * * *"

To agree with the contentions of the defendants that the Government must prove the defendants intended that their communications be interstate or foreign would nullify the very purpose of the statute.

It clearly follows from the foregoing that these defendants, on the basis of convincing evidence against them, likewise violated 47 U.S.C.A. § 318.

The defendants are therefore found guilty on both counts of the indictment.