## UNITED STATES v. TARPON SPRINGS SPONGE EXCHANGE et al.

### No. 10880.

Circuit Court of Appeals, Fifth Circuit.

April 26, 1944.

Rehearing Denied May 25, 1944.

Philip Marcus and Frank H. Elmore, Jr., Sp. Assts. to the Atty. Gen., and Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellant.

Geo. P. Raney, of Tampa, Fla., and Thomas A. Reynolds, of Chicago, Ill., for appellees.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The indictment was stricken on a demurrer which contained grounds relating both to its substance and form. The order sustaining the demurrer goes principally, if not wholly, on the insufficiency of the indictment to apprise defendants of the charge against them, or to show how or in what manner they violated the Sherman Act, and is so vague and uncertain as not to enable the defendants to prepare for trial.

The indictment is too long to quote. It seeks to charge a violation of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, by a conspiracy alleged in the first count to be one to restrain interstate commerce in natural sponges, and in a second count to be one to monopolize that commerce. Otherwise, the two counts are substantially identical. The indictment as a whole is an artificial and overstuffed document, divided into topics and hard for us to understand. It makes very few allegations which are specific as to time, place, or persons. It says each allegation "shall be deemed to be an allegation that such act was performed within three years next preceding the return of the indictment", and that "Whenever it is herein alleged that a defendant corporation did any act or thing, it shall be deemed to mean that the officers, directors, agents or employees" did them for the corporation. Legislative acts sometimes use such expressions, but we think they are bad in criminal pleading and poor substitutes for the certainty and explicitness requisite therein. Especially is this true when, as here, there are numerous corporate defendants doing business in widely separated States and all are charged without distinction with doing everything mentioned in the long indictment. But at last the conspiracy itself is the heart of the crime, not even an overt act being necessary to consummate it, and it is plainly charged that it began in 1936 and continued to the date of the indictment, and each corporate defendant is alleged to have participated in it. A corporation can do no act, criminal or otherwise, except by

its officers, agents and employees, and it was unnecessary to say in the indictment that they so acted. Who acted, and with what authority, is generally a matter of evidence, and if a corporate defendant does not know who it is expected to be shown acted for it, the proper remedy is to ask for a bill of particulars.

■ As to the substance of the charge, it is alleged that the corporate defendants (except Tarpon Springs Sponge Exchange) buy and sell sponges in Florida and ship them into other States, and are members of the Exchange. The numerous individual defendants are officers and directors of the Exchange, or members of it, and actively engaged in the business of buying and selling the sponges, and each "has done some or all of the acts described in this indictment." The quoted allegation is certainly bad pleading, and leaves it quite uncertain what each is charged with doing. Inasmuch, however, as it refers to a number of acts done in pursuance of the conspiracy which need not have been alleged at all, rather than to participation in the conspiracy itself, we think it also remediable by a bill of particulars, on demand of any defendant who is uncertain as to what is to be proved against him.

■ It is alleged that since 1936 the Exchange has been maintained at Tarpon Springs, Florida, and that practically all the natural sponges available for interstate commerce throughout the United States are collected from the neighboring waters by about 120 fishing boats and brought for sale to Tarpon Springs. The Exchange is maintained in order to buy, pack, and resell the catch in interstate commerce. The indictment thereupon charges that there has been since 1936 a continuing conspiracy and concert of action among all the defendants to restrain and monopolize this interstate commerce, the substantial terms of which have been to:

"(a) Agree to compel and have compelled sponge fishers to sell natural sponges only through the Exchange.

"(b) Agree to and have barred sponge fishers who had made sales off the Exchange from selling on the Exchange.

"(c) Agree to compel and have compelled purchasers to buy sponges only through the Exchange or members thereof.

"(d) Agree to refuse and have refused the use of the Exchange to persons purchasing outside the Exchange.

"(e) (f) (g) Agree to limit and have limited and restricted membership in the Exchange as they saw fit.

"(h) Agree to impose and have imposed unreasonable conditions and discriminatory charges upon purchases of natural sponges on the Exchange for non-members."[1]

It is then alleged that this agreement and concerted action pursuant to the conspiracy have had the effect, intended by defendants, of unlawfully restraining and suppressing competition in the purchase and sale of natural sponges in interstate commerce, and excluding other persons therefrom.

■ The quoted allegations are unfortunate in mixing together the things agreed to be done, which constitute the conspiracy, with the things done, which may be only evidence of the agreement. It looks as though the defendants are charged with these acts as crimes in themselves, in which event they would of course be entitled to a better statement of time, place, and persons concerned. But it is plain enough that conspiracy is the only thing charged, and the concert of action is intended to be put forth as evidence of the conspiracy. It would be better to allege only what was agreed to be done, and leave what was done to development in the evidence, but again we say that uncertainties about what was to be proved as done, and to whom and by whom and by what means, may be taken care of by request for a bill of particulars.

■ The substance of a crime under the Sherman Act is charged. It appears that the supply of sponges, a subject of interstate commerce, is limited and localized, and averred that the defendants have conspired unlawfully to secure for themselves control of that supply, and by means of their Exchange to control the sale of the sponges and exclude competitors. If that is proven, there is restraint and monopolization of a part of interstate commerce which may be unreasonable and unlawful under the interpretation given the Sherman Act. Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734; Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044. To corner the supply of cotton,

---

[1] We have somewhat abbreviated this quotation.

though purchases were made only of contracts on the New York Exchange, was held criminal. United States v. Patten, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325. To discourage competitors by a sort of blacklist of lumber dealers who sold direct to consumers was held an unlawful restraint. Eastern States Retail Lumber Dealers Ass'n v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788. But on the other hand there is a place for trade associations which with a lawful purpose distribute information. Sugar Institute v. United States, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859. Exchanges may be very helpful and wholly lawful. Hopkins v. United States, 171 U.S. 578, 19 S.Ct. 40, 43 L.Ed. 290; Anderson v. United States 171 U.S. 604, 19 S.Ct. 50, 43 L.Ed. 300. An exchange rule reasonably regulating sales between sessions is not an unlawful restraint of commerce. Board of Trade of City of Chicago v. United States, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683, Ann.Cas.1918D 1207. Much depends on the purpose with which the exchange is operated and the intended results to interstate commerce.

We are therefore of opinion that the substance of the crime of conspiracy against commerce is charged; that the exuberance of allegation can be controlled by a proper charge of the court to the jury, so as to enable them to understand what they are really trying; and that uncertainties as to what is intended to be proven can properly be removed by requested bills of particulars; and by consequence the work of the grand jury need not be thrown away. The demurrer to the indictment ought to be overruled.

Judgment reversed.