HARKINS AMUSEMENT
ENTERPRISES, et al.,
Plaintiffs,

v.

GENERAL CINEMA CORPORATION,
et al., Defendants.

No. CIV 77–736 PHX CLH.

United States District Court,
D. Arizona.

May 14, 1990.

Edwin Tobolowsky, N. Henry Simpson, Tobolowsky, Prager & Schlinger, Dallas, Tex., David N. Farren, Joseph Wm. Kruchek, Shimmel, Hill, Bishop & Gruender, P.C., William P. French, Ann A. Scott Timmer, Scult, Lazarus & French, P.A., Phoenix, Ariz., for plaintiff Harkins Amusement Enterprises, Inc.

Robert C. Hackett, David W. Dow, Thomas M. Quigley, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, Ariz., for defendant American Multi–Cinema, Inc.

Harry B. Swerdlow, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendant The Harry Nace Co.

John P. Frank, Andrew S. Gordon, Janet Napolitano, Lewis & Roca, Phoenix, Ariz., for distributor defendants United Artists Communications Theatres, Paramount, 20th Century Fox, Universal Exchanges, Warner Bros., Columbia Pictures, AVCO, MGM and MPAA.

Joel Linzner, Linda J. Margolies, Khourie, Crew & Jaeger, San Francisco, Cal., for defendant United Artists Communications, Inc.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

The Court has had under advisement the defendant United Artists/MGM's motion for summary judgment on all remaining claims, the distributor defendants' collective motion for partial summary judgment on the circuit-dealing and bid-rigging claims, and the defendant AMC's motion for summary judgment on certain distributor defendants' participation in the split. The motions will be denied.

Throughout this litigation, the defendants have viewed Count I of the Amended Complaint as alleging discrete claims for which relief can be granted. In fact, Count I alleges only one claim, that "each of the Defendants agreed, combined and conspired to unlawfully restrain trade and commerce in violation of Section 1 of the Sherman Act by the following anticompetitive acts." The separate allegations of bid-rigging, market splitting and circuit wide dealing are simply the "anti-competitive acts" allegedly performed in furtherance of the alleged conspiracy.

If Harkins has presented evidence that any distributor or exhibitor was a member of the alleged conspiracy, that defendant cannot limit its potential liability by compartmentalizing the various factual components of Harkins' claims and obtaining summary judgment that it was not involved in one of the components. Nor does the fact that some of the distributor defendants may have settled with plaintiffs serve to reduce the potential liability of the remaining defendants.

As the Supreme Court has noted in another case involving Section 1 of the Sherman Act:

> In cases such as this, plaintiffs should be given full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. '... [T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole. *United States v. Patten*, 226 U.S. 525, 544, 33 S.Ct. 141 [145], 57 L.Ed. 333.'
>
> \*    \*    \*    \*    \*    \*
>
> ... [A]cts which are themselves legal lose that character when they become constituent elements of an unlawful scheme.

*Continental Ore Co. v. Union Carbide Corporation*, 370 U.S. 690, 699, 707, 82 S.Ct. 1404, 1410, 1414–15, 8 L.Ed.2d 777 (1962). *See also Beltz Travel Service, Inc. v. International Air Transport Association*, 620 F.2d 1360, 1366 (9th Cir.1980).

I. *Evidence Implicating Each Individual Distributor in Bid Rigging and Circuit Dealing is not Necessarily Required*

■ Footnote 4 of the Ninth Circuit's opinion in this case distinguishes the impact of the ruling on the exhibitors, as opposed to the distributor defendants. The footnote specifically states that the decision applies to all of the exhibitors, since Harkins has raised a triable issue of conspiracy among the exhibitors, but states that the issue of whether the individual distributors were entitled to judgment was not addressed. The footnote can be read as an invitation to the distributors, who brought their summary judgment motions jointly, to argue that they are individually entitled to summary judgment.

The distributors have accepted this invitation and have provided citations to deposition testimony purporting to absolve each of the individual distributors of any participation in bid rigging or circuit wide deals.

In the original motion papers, Harkins failed to offer any citations to the record in

this case as evidence tending to implicate each of the distributors in the conspiracy. In the place of specific citations, Harkins incorporated the statement of facts opposing the distributors' 1986 motions for summary judgment.

Rather than sift through the record in a hunt for evidence supporting Harkins' claims, the court gave Harkins the opportunity, after oral argument, to submit specific citations to the record or other evidence implicating each of the individual distributors in the allegations of bid rigging and circuit dealing. In response, Harkins has offered documentation which purports to support Harkins' claims of bid rigging and circuit dealing. The documents consist largely of bid invitation letters, bids, bid recommendation forms, and licensing agreements. This documentary data is organized into four lists of films, each of which purportedly represent different types of circumstantial evidence indicating bid rigging.

In light of this court's December 20 ruling—which held that the participation of individual distributors in the exhibitors' horizontal conspiracy renders that distributor jointly liable for the acts of co-conspirators taken in furtherance of the conspiracy—it has become unnecessary to provide evidence implicating each individual distributor in the allegations of bid rigging and circuit dealing. As has been noted, the circumstantial evidence of bid rigging and circuit dealing does not have to stand alone in establishing an individual distributor's participation in the exhibitors' horizontal conspiracy to exclude Harkins from the market.

To the extent that Harkins has established a genuine issue of material fact which links an individual distributor to the exhibitors' horizontal conspiracy through the allegations of market splitting,[1] the allegations of bid-rigging and circuit dealing, where supported by the record,[2] can be offered as additional evidence of acts taken in furtherance of the distributors' participation in the conspiracy.

## II. *Motion for Summary Judgment on Certain Distributors' Participation in the Split*

AMC has brought a motion for summary judgment challenging the sufficiency of the evidence as to the settled distributor defendants' participation in the split. In order to defeat AMC's motion, Harkins must establish a genuine issue of fact as to the existence of an agreement which ties each of the settled distributors to the split members' horizontal conspiracy to exclude Harkins from the market. *See Harkins Amusement Enterprises v. General Cinema Corp.*, 850 F.2d 477, 485 (9th Cir. 1988).

### A. Sufficiency of the Evidence

■ AMC cites the four categories of circumstantial evidence cited by the Ninth Circuit in support of Harkins' allegations of market splitting, *Harkins*, 850 F.2d at 484, and attempts to establish that this evidence does not implicate any of the settled defendants. Harkins has countered with deposition testimony and the same type of statistical evidence cited by the Ninth Circuit.

The statistical evidence, when considered with the testimony and the similar finding by the Ninth Circuit, creates a circumstantial inference sufficient to defeat AMC's motion for summary judgment. Harkins has established a genuine issue of material fact as to each of the settled defendants'

---

**1.** The issue of the individual distributors' participation in the market split has been resolved in separate motions with respect to the settled defendants and United Artists. Only Columbia and Twentieth Century Fox have yet to be tied into the exhibitors' horizontal conspiracy to split the Phoenix market. These two distributors have filed separate motions for summary judgment on this issue which have been withdrawn without prejudice pending further discovery.

**2.** The distributors raise various objections to some of the films Harkins offers as circumstantial evidence of bid rigging and circuit dealing. The majority of these objections involve disputes over Harkins' bid comparisons. These issues are more properly brought prior to trial as motions in limine to exclude the introduction of specific films as evidence.

vertical participation in the exhibitors' horizontal conspiracy.

### B. Evidence of Conduct Contrary to Economic Self–Interest

■ AMC also argues that Harkins has failed to establish a clear and consistent pattern of conduct contrary to each of the settled distributor defendants' economic self interest. AMC contends that Harkins cannot prevail on their allegations of market splitting because the evidence against each distributor reveals nothing more than isolated instances of non-dealing that reflect independent business judgment. UA/MGM argues that, as a result, Harkins is unable to establish the requirement of a "clear and consistent pattern of non-dealing in circumstances where dealing would have been more profitable." *Southway Theatres, Inc. v. Georgia Theatres Co.*, 672 F.2d 485, 502 (5th Cir.1982); *Universal Amusement Co., Inc. v. General Cinema Corp. of Texas*, 635 F.Supp. 1505, 1517 (S.D.Tex.1985).[3]

However, the Ninth Circuit's decision suggests that Harkins is only required to establish an overall pattern suggesting that, collectively, the distributors were not acting in their economic self-interest. *Harkins*, 850 F.2d at 484. The Ninth Circuit held that if Harkins' bids were often lucrative in light of the anti-competitive nature of the Phoenix market, their consistent rejection by the distributors can be explained only as extraordinary exercises of bad judgment or an acquiescence to and participation in the exhibitors' horizontal conspiracy. The Court noted that the quality of Harkins' bids was a question of fact and that when "[v]iewed collectively, this circumstantial evidence 'tends to exclude the possibility of independent action by the distributors'.... Harkins has met its burden on this issue." *Harkins*, 850 F.2d at 485.

Harkins has established a genuine issue of material fact as to whether the distributors' consistent pattern of non-dealing was motivated by rational economic choice or by their individual participation in the exhibitors' horizontal conspiracy to restrain trade by excluding Harkins from the market.

### III. *UA/MGM's Motion for Summary Judgment on all Remaining Claims*

As has been noted, Harkins must show that each individual distributor defendant entered into a vertical agreement with, and therefore participated in the conspiracy among, the members of the Phoenix split. *Harkins*, 850 F.2d at 485. Consequently, Harkins must establish a genuine issue of fact as to the existence of an agreement which ties UA/MGM to the split members' horizontal conspiracy to exclude Harkins from the market.

### A. Sufficiency of the Evidence

■ There are clearly issues of fact which preclude granting summary judgment in favor of UA/MGM. In *Harkins*, the Ninth Circuit quoted with approval its holding in *Dimidowich v. Bell and Howell*, 803 F.2d 1473, 1479 (9th Cir.1986) that "[c]oncerted action may be inferred from circumstantial evidence of the defendants' conduct and course of dealings." The Court ruled that Harkins had presented sufficient statistical evidence to establish a genuine issue of material fact as to whether the distributors had actively participated in the alleged conspiracy.

Harkins has presented circumstantial evidence—consisting of the percentage of time that UA/MGM actually licensed its films to split members during the time for which Harkins has direct evidence of the split based on the split notes—which creates a genuine issue of material fact that UA/MGM participated and cooperated in the exhibitors' horizontal conspiracy. The statistical evidence also indicates that UA/MGM refused to license to Harkins: (1) films for which Harkins submitted the obviously superior bids; (2) films for which Harkins submitted the only bids; (3) films for which Harkins submitted a timely bid but which were awarded to exhibitor split members based on untimely or undated

---

**3.** UA/MGM also raises this issue in its separate motion for summary judgment on all remaining claims.

bids; and (4) films for which Harkins submitted the only bid superior to the licensing agreement eventually negotiated by UA/MGM with a split member.[4]

Some of the films listed by Harkins as evidence of bid rigging were bid after March 1977, the cutoff of the period for which Harkins can claim damages. While Harkins cannot recover damages for these later films, they appear to be probative evidence of UA/MGM's participation in the alleged conspiracy during the relevant damage period.

Harkins has also cited the deposition testimony of Pat Notaro, the "split captain" during the period in question, which implicates UA/MGM in the split. Notaro testified that he had a discussion with Jim Velde of United Artists to the effect that if a United Artists' film was split to a theater that Velde deemed inferior, United Artists could then license the film to another exhibitor.

### B. Effect of Purported Settlement Agreement Raises Genuine Issues of Material Fact

■ UA/MGM acknowledges that during the relevant damage period Carl Smiley, Harkins' film buyer, regularly complained to UA because Harkins was not able to license first-run films from UA/MGM. As a result of these complaints, Harkins and UA reached an agreement whereby UA agreed to license Harkins its films for their second run if Smiley would stop demanding the right to license first-run films. UA/MGM argues that this settlement agreement precludes Harkins from suing UA/MGM based on his inability to license first-run films.

The deposition testimony clearly indicates that there are genuine issues of material fact as to the nature of the purported settlement agreement between Harkins and UA/MGM, and Harkins' subsequent demands for the right to license first-run films from UA/MGM.

### C. Market Splitting Does not Necessarily Require Competitive Bidding

■ UA/MGM argues that since it negotiated all of its deals, and did not accept bids, the split was forced to allocate around UA/MGM and it therefore could not be involved in bid rigging.

Harkins' complaint alleges market splitting not "bid peddling," as UA/MGM attempts to characterize the claim. Market splitting can be accomplished just as easily through negotiated allocation of individual licenses, as it can through bid rigging.

The fact that UA/MGM chose to negotiate film licenses rather than accept bids does not necessarily preclude it from being held liable for market splitting. Harkins has established a genuine issue of material fact that UA/MGM participated in the Phoenix split's conspiracy to exclude Harkins from the market by allocating its films to members of the Phoenix split but not to Harkins.

### D. Proof of Market Power and Damages Cannot be Segregated by Individual Components of the Overall Conspiracy

■ UA/MGM argues that since it accepted no bids it could not be involved in bid rigging. UA/MGM also argues that Harkins has not segregated the damages resulting from the bid rigging and circuit dealing claims. In addition, UA/MGM argues that the one circuit deal it is accused of entering into does not represent enough market power to establish liability under the Rule of Reason.

If one or more acts taken in furtherance of a single conspiracy will justify an award of damages resulting from the entire conspiracy, then damages do not have to be segregated and claimed for each separate

---

**4.** This statistical evidence mirrors the evidence relied on by the Ninth Circuit in holding that there was a material issue of fact as to the distributors' collective participation in the split. UA/MGM raises various objections to some of the films Harkins offers as circumstantial evidence of its participation in the split. Like the distributors' objections to Harkins' evidence of their participation in bid rigging and circuit dealing, the majority of these objections involve disputes over Harkins' bid comparisons. These issues are more properly brought prior to trial as motions in limine to exclude the introduction of specific films as evidence.

act taken in furtherance of the conspiracy. *See National Farmers Association v. Association of Milk Producers*, 850 F.2d 1286, 1307 (8th Cir.1988). In other words, if an antitrust plaintiff alleges that the defendant engaged in unlawful acts A, B, C and D, and acts C and D are later rejected as a basis for liability, it does not automatically follow that the damage award must be reduced. Rather, if acts A and B support the entire damage award, it must be sustained.

*National Farmers*, 850 F.2d at 1307.

In this case, Harkins is claiming damages resulting from its exclusion from the market for the licensing of first-run films which it claims was accomplished through acts of market splitting, bid rigging and circuit dealing taken in furtherance of a single conspiracy. Consequently, even if the jury rejects Harkins' allegations of bid rigging and circuit dealing, they can still find the defendants liable for the entire damage award based on the market splitting claim if the evidence is sufficient to establish Harkins' exclusion from the market for superior first-run films.

UA/MGM argues that by entering into a single circuit wide deal, it could not have possessed enough of a market share to have had an adverse impact on competition in the relevant market.

However, it is the conspiracy as a whole, and not the participation of each individual co-conspirator, that must have the adverse impact on competition in the relevant market. As has been noted, the character and effect of the alleged conspiracy is not to be judged by viewing its separate parts but by looking at it as a whole. *Continental Ore Co. v. Union Carbide*, 370 U.S. at 699, 707, 82 S.Ct. at 1410, 1414–15. *See also Beltz Travel Services, Inc. v. International Air Transport Association*, 620 F.2d at 1366.

IT IS ORDERED as follows:

1. Denying the defendant United Artists/MGM's motion for summary judgment on all remaining claims.

2. Denying the defendant distributors' collective motion for partial summary judgment on the circuit-dealing and bid-rigging claims.

3. Denying the defendant American Multi–Cinema, Inc.'s motion for summary judgment on certain defendant distributors' participation in the split.