**BOYLE v. UNITED STATES.**

(Circuit Court of Appeals, Seventh Circuit. April 4, 1919. Rehearing Denied June 30, 1919.)

Nos. 2573–2585, 2590.

1. MONOPOLIES ⬤⟹31—INDICTMENT—SUFFICIENCY.

An indictment under section 1 of the Sherman Anti-Trust Act (Comp. St. § 8820) need not set forth the means by which the conspiracy was accomplished where the object itself was unlawful.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MONOPOLIES ☞29—CRIMINAL PROSECUTION—INTERSTATE TRADING.

Where defendants combined to prevent certain electrical ·appliances from being transported to Chicago, the mere fact that they intended to accomplish this result by interfering with the installation of the apparatus in Chicago does˙not relieve the offense of its interstate character so as to preclude prosecution under the Sherman Anti-Trust Act.

3. MONOPOLIES ☞12(2)—BOYCOTT—COMBINATION BETWEEN EMPLOYER AND EMPLOYÉ.

Evidence that employers agreed to increase wages if employés prevented any but union switchboards being used in Chicago, that employés accomplished such result by boycotting concerns using switchboards manufactured in other places, etc., held to sustain a conviction of both employers and employés for violating the Sherman Anti-Trust Act.

4. CRIMINAL LAW ☞149—LIMITATIONS.

In a prosecution under the Sherman Anti-Trust Act for unlawfully conspiring to restrain trade, the statute of limitations does not run from the time the combination was originally made, but only from the time a conspirator indicates his withdrawal from the combination by some affirmative act.

5. MONOPOLIES ☞31—CRIMINAL PROSECUTION—VARIANCE.

In a prosecution under the Sherman Anti-Trust Act, there is no variance between an indictment that defendants combined to prevent the installation of˙any electrical appliances not manufactured by them in a certain city, and proof that the combination related only to certain specified appliances.

6. CRIMINAL LAW ☞423(3)—ADMISSION OF EVIDENCE—ACTS OF COCONSPIRATORS.

In a prosecution under the Sherman Anti-Trust Act against employers and employés for conspiring to prevent any but union-made switchboards being installed in Chicago, evidence that a defendant trade-unionist exacted payments from builders installing other switchboards as a condition of not calling strikes, etc., held admissible as an act of one coconspirator in furtherance of the object of the conspiracy.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Michael Boyle, Frank A. Lundmark, Raymond Cleary, Warren Ripple, Gustave W. Berthold, Otis B. Duncan, Charles J. Peterson, Charles Kreider, the Cuthbert Electrical Manufacturing Company, Henry Newgard & Co., John Cuthbert, the Electrical Apparatus Company, Julian J. Nielsen, and James Obermiller, were convicted of violating the Sherman Anti-Trust Act, and separately bring error. Affirmed.

Plaintiffs in error were convicted of a violation of section 1 of the so-called Sherman Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209 [Comp. St. § 8820]). The indictment included nine counts, four charging conspiracy, three, combination, and two, contract, all to restrain trade or commerce among the several states.

Prior to 1910 certain manufacturers located outside of the city of Chicago were engaged in making switch and panel boards and other electrical appliances which were sold and shipped in interstate commerce finding a market in Chicago. Other of the plaintiffs in error were either officers and agents of the home manufacturing companies or of the labor unions. Prior to 1910 all products were made by nonunion labor.

In 1909 efforts were made to unionize the shops of the Chicago manufacturers, a detailed statement of the campaign being unimportant. The employers insisted that they could not compete with the foreign manufacturer who employed nonunion labor. As a result strikes were called—some shops

were unionized, others held out. At this point a conference was arranged and a plan proposed to avoid the competition of nonunion shops. On or about April 1, 1911, an agreement was reached between the manufacturing companies and the representatives of the labor unions whereby the shops were unionized and a scale of wages adopted. The government contends that the agreement also unlawfully provided for the restraint of interstate trade by eliminating the competition of the foreign manufacturer. This elimination of competition was to be accomplished by means of coercion, boycott, threat of strike, and destruction of property wherever switchboards or panel boards made by the foreign corporations were installed. The agreement as reduced to writing expired at the end of a year, but new agreements were subsequently made. During the period covered by the indictment very few switchboards made by the manufacturers outside of Chicago found their way into the city. The malicious destruction of property and the interference with the work of construction were effective weapons that eliminated outside competition. Plaintiffs in error denied making any agreement that was unlawful or that called for anything but a bona fide effort to unionize all shops in and out of Chicago engaged in making electrical appliances, and especially denied that the agreement contemplated any destruction of property, the use of the boycott or blackmail, etc.

Error is assigned:

(a) In overruling the demurrer to the indictment.

(b) In admitting evidence over objections.

(c) In denying the motion for a directed verdict.

Albert Fink, John S. Miller, and David D. Stansbury, all of Chicago, Ill., for plaintiffs in error.

Charles F. Clyne and Albert L. Hopkins, both of Chicago, Ill., and Robert T. Neill, of El Paso, Tex., for the United States.

Before BAKER, MACK, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). Section 1 of the Anti-Trust Act reads:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal."

The government charged plaintiffs in error (in four counts) with a conspiracy to restrain trade or commerce among the several states (in three counts), with a combination to restrain such trade, and (in two counts) with a contract to restrain such trade.

[1] Plaintiffs in error contend that none of the counts set forth an offense under the statute; it being claimed, among other contentions, that the means by which the object of the conspiracy or combination was to be accomplished were not set forth. Without considering the means that are set forth in the indictment, it is sufficient to say that the pleader was not required to set forth any means. Where the object of the conspiracy is unlawful, as in this case, it is unnecessary to set forth the means by which the object is accomplished. Jelke v. United States, 255 Fed. 364, —— C. C. A. ——.

[2] It is also claimed that the government failed to show that the object of the combination was to interfere with interstate trade; that it affirmatively appeared that the object was to prevent the installation in Chicago of certain electrical appliances, an alleged intrastate transaction. This contention is contrary to the ruling of the court in East-

ern States Retail Lumber Dealers' Association v. United States, 234 U. S. 600, 34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788; United States v. Patten, 226 U. S. 525, 33 Sup. Ct. 141, 57 L. Ed. 333; Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; Lawlor v. Loewe, 235 U. S. 522, 35 Sup. Ct. 170, 59 L. Ed. 341; Montague & Co. v. Lowry, 193 U. S. 38, 24 Sup. Ct. 307, 48 L. Ed. 608. In the first Lawlor Case the court announces the rule in the following language:

"If the purposes of the combination were, as alleged, to prevent any interstate transportation at all, the fact that the means operated at one end before physical transportation commenced and at the other end after the physical transportation ended was immaterial."

There can be no question but what the government charged the plaintiffs in error with a combination—

"the nature of which is now here described, to restrain said trade and commerce of said concerns, corporations and firms located in states other than the state of Illinois, in the manner and by the means now here set forth."

Then follows a statement of the means by which the object was to be accomplished, namely:

"Said defendants were to hinder, restrain, and prevent the installation in the city of Chicago of any electrical appliances not manufactured by the members of the said association in said city of Chicago," etc.

The object of the combination being to prevent interstate transportation (that is, prevent the shipment of switchboards, etc., from a point outside the state of Illinois to the city of Chicago), the mere fact that the means by which this object was to be accomplished was limited to interference with their installation in Chicago cannot relieve the transaction of its interstate character.

[3] Does the evidence support the verdict? It is hardly necessary to restate all of the evidence upon which the government relied in answer to this challenge made by the plaintiffs in error. An examination of the record convinces us that there is credible evidence in the record sufficient to support the verdict. That the parties entered into a combination, that they reduced their agreement in part to writing, is conceded. That the parties combined to restrain the shipment of commodities from points outside of the state of Illinois to the city of Chicago is fairly inferable from a part of the written agreement. The employers were anxious to avoid competition from nonunion shops. The employés desired to unionize the shops. They agreed that:

"This increase in scale is to go into effect only in case the party of the second part has succeeded before October 1, 1911, in bringing about a condition which will permit of none but union label switchboard work to be installed in the city of Chicago."

While the practices by which the second party was to bring about this result were not set forth, it is at least inferable even from this agreement alone that outside made switchboards would not be installed in the city of Chicago. Plaintiffs in error, and particularly the manufacturing companies, insist, however, that the agreement above quoted is capable of a construction consistent with their inno-

cence; that they understood the second party was to unionize the shops outside of the city of Chicago and thereby competition from nonunion labor would be eliminated. While this is hardly the fair or rational conclusion to be drawn from this language, the contract is by no means all of the evidence in the case. The written agreement was merely a part of the evidence in the case. Witnesses testified orally to the entire agreement and understanding of the parties, and the jury and not this court must determine the weight of this testimony.

The reasons which actuated the parties to thus conspire and combine may have been and doubtless were quite different. The manufacturer was induced to enter into the agreement because of a desire to eliminate competition. He also wanted to settle his labor problem. The representatives of the unions were actuated by a different motive. But it was not the motive, but the common and concerted action of the parties for the unlawful purpose of restraining interstate commerce for which plaintiffs in error were indicted and convicted.

[4] Nor was the government barred by the statute of limitations. Plaintiffs in error were not tried for entering into the written contract of April 1, 1911, but were convicted of the unlawful conspiracy to restrain trade which was a continuing conspiracy or combination. While the parties entering into such unlawful combination might have withdrawn from such combination and thereby have relieved themselves from further liability, and the statute of limitations would have begun to run from the time of such withdrawal, yet it required some affirmative act on the part of the conspirators to avoid the liability which their entry into the combination created. Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; United States v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168.

[5] Variance: Plaintiffs in error assert that, because the pleader charged them with combining to prevent "the installation in the city of Chicago of any electrical appliances not manufactured by said associations in the city of Chicago," etc., there is a fatal variance because the proof merely showed that plaintiffs in error combined to prevent the installation in the city of Chicago of certain electrical appliances, to wit, switch and panel boards made by nonunion labor.

Although relied on by each plaintiff in error, and the argument in support thereof repeated in each of the briefs, this contention does not impress us other than as a "grasp at straws." Accepting the position most favorable to plaintiffs in error, there is no variance. The government merely failed to meet its allegations as broadly as alleged.

If a conspiracy to rob a post office of all its stamps were charged in an indictment, could it be seriously urged that there was a fatal variance, or even failure of proof, if the prosecution merely proved a conspiracy to rob the post office of its postage stamps? We think not. Proof tending to show plaintiffs in error interfered with interstate commerce by preventing the shipment of switchboards and panel boards into Chicago is likewise not at variance with an allegation that the parties conspired to prevent the shipment into Chicago of all electrical appliances.

[6] Complaint is also made because of the admission of evidence over objection. The government introduced testimony showing that plaintiff in error Boyle on various occasions made builders pay him considerable sums of money under threat of a strike or a boycott. For example, one witness testified that he had paid Boyle $500 to get a certain switchboard installed; another, that Boyle exacted of him $3,000 in order that he might install a certain switchboard; and still another testified that Boyle required a church to pay $200 as a penalty for installing certain electrical apparatus. Still another witness testified that Boyle exacted a payment of $20,000 in order to get immunity from strikes, etc., and at a time when there was no difficulty whatever between the builder and the employés. Plaintiffs in error contend that this evidence was not only inadmissible but highly prejudicial to their cause.

That such testimony, if erroneously admitted, was prejudicial, must be conceded. For it requires no stretch of the imagination to conceive of a jury taking a prejudice against a party who is thus pictured in the role of a blackmailer, a highwayman, a betrayer of labor, and a leech on commerce. But the test of admissibility does not turn upon its effect upon the jury, but on its relevancy to the issues made by the charges set forth in the indictment.

The government charged a conspiracy or combination to restrain interstate commerce. A prima facie case of conspiracy was established. Boyle was one of the coconspirators. As the object of the conspiracy, switchboards and panel boards made outside of Chicago were not to find a market in the city of Chicago. This object—this interference with interstate commerce—was to be brought about by threatened strikes, by boycotts, or by the exaction of graft to prevent strikes and boycotts. What more direct or immediate restraint upon the sale and installation of switchboards and panel boards made outside of Chicago than a burden of $3,000, or $5,000 upon the builder who sought to install them? It was as effective a means of preventing their installation in Chicago as threatened strikes. The testimony was receivable as an act of one of the coconspirators in furtherance of the object of the conspiracy.

Nor does the evidence justify the claim that the $20,000 payment was in no way connected with the installation of switchboards or panel boards. The Chicago Telephone Building was in the course of construction. The architect had specified switchboards made outside of Chicago. Boyle prevented the contractor from securing electricians. It is true the $20,000 was paid by the builder to purchase his entire peace but included noninterference in the installation of switchboards as well as noninterference in the construction of the entire building. The items were not separated. The $20,000 was paid by checks at various times and with the understanding on the part of the builder that he could proceed without strikes or molestation. But a part of the consideration for this payment was unquestionably the permission to install switchboards that the architect designated and which the builder preferred.

The court instructed the jury that the action or statements of one of the plaintiffs in error were not binding unless the jury found that a conspiracy existed. Under these circumstances, and for the purpose for which it was offered, this testimony was admissible.

Other assignments of error were made which we have duly considered, but they do not warrant separate consideration.

The judgment is affirmed.