### BRIMS et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. June 4, 1925.)

No. 3436.

Monopolies ⬤⟳31—Proof held not to sustain indictment charging conspiracy to prevent shipments in interstate commerce.

In prosecution under Sherman Anti-Trust Act, § 1 (Comp. St. § 8820), proof that employers' association and labor unions in Chicago agreed not to use nonunion and prison-made millwork did not sustain indictment charging conspiracy to prevent manufacturers in states other than Illinois from selling and shipping building material to Chicago; restriction not being against shipment into Illinois, but against nonunion millwork, wherever made.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

William F. Brims and others were convicted of violating the Sherman Anti-Trust Act, and they bring error. Reversed and remanded.

Hope Thompson, Robert W. Childs, and Albert Fink, all of Chicago, Ill., for plaintiff in error.

Edwin A. Olson, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Defendants, 68 in number, were charged with a violation of section 1 of the Sherman Anti-Trust Act (Comp. St. § .8820). Forty-one were convicted. A new trial was granted as to several, and 26 joined in the prosecution.

of this writ of error. The government, for convenience sake, has classified defendants into contractor, manufacturer, and union labor defendants.

The prosecution arises out of agreements made between these several defendants, which agreements dealt with the manufacture and installation of certain building material, commonly known as millwork, and which included window and door fittings, door and window sashes, baseboards, picture moldings, cornices, bookcases, panel wainscoting, etc. The indictment alleges that, in order to monopolize the business of supplying and installing building material and to secure excessive prices therefor, the defendants conspired together to prevent concerns outside of the city of Chicago and in other states than Illinois from selling and delivering their building material in, and shipping the same to, the said city of Chicago in competition with said building materials of manufacturing defendants located in Chicago.

For many years (1900 to 1918) the contractors' association and the union labor organizations had entered into agreements (usually biennial) whereby terms of employment, hours of labor, and compensation, were fixed. Each of the agreements prior to 1918, contained a clause (familiarly known as article 3, section 3) which read: "There will be no restriction on the use of any manufactured material *except prison-made*." In 1918 this section was amended to read: "There shall be no restrictions against the use of any manufactured material, *except nonunion and prison-made*. This shall not apply to machine-made flooring, ceiling, or ceiling partition, plain lumber, or hardware of any kind." It was the insertion of the word "nonunion" that brought about a situation which resulted in the institution of these criminal proceedings.

It appeared from the evidence that prior to 1918 a large amount of material was shipped into the city of Chicago for use therein, from Oshkosh, Wis.; the millwork industry being well developed in that city, and the labor therein employed being nonunion. It was evidently the hope of the union organizations to force the unionizing of these nonunion shops through a modification in the agreement. The results were decisive. One company, the Morgan Sash & Door Company, of Oshkosh, Wis., for the years 1910 to 1918, shipped to Chicago an average of $250,000 worth of millwork. After this agreement was made their business dropped to $61,000 in 1919 and to $50,000 in 1920. Many of the nonunion shops in Oshkosh

showed a similar decline in volume of shipments into Chicago.

One assignment of error, based on the alleged failure of proof to support the charge or the alleged fatal variance between allegation and proof, is we think, well taken, and makes it unnecessary to consider other questions, and facts not material to this issue will not be related. The indictment charged defendants with "combining or conspiring to prevent manufacturing plants located outside of the city of Chicago *and in other states than Illinois from selling and delivering their building material in and shipping the same to said city of Chicago.*" The indictment thus drawn charged an interference with, an obstruction to, or a prevention of, shipments in interstate commerce. The proof, however, disclosed merely an agreement between defendants whereby union defendants were not to work upon nonunion-made millwork.

In the city of Chicago, the manufacturing defendants employed union labor. The contractors, who also employed union labor, could, by this agreement, purchase only union-made millwork. Otherwise, the union defendants would not install it. This naturally resulted in an advantage to the manufacturing defendants, whose shops were unionized. Practically all of the manufacturing plants in the city of Chicago were unionized. Therefore there was a resulting benefit to such Chicago plants. In other words, prior to this agreement the millwork used in Chicago was supplied by the manufacturing companies in Chicago and the territory adjacent thereto. Large quantities came from Oshkosh, Wis., where there were nonunion shops. The Chicago shops or factories, being largely union shops, prospered under this new agreement at the expense of the nonunion shops in other localities.

In his opening statement to the jury, counsel for the government said: "The evidence will show that this material was referred to, by this labor committee, * * * as outside material. The agreement itself had the word 'nonunion' inserted, and we will show to you, gentlemen, that all of these meetings together was to eliminate from the Chicago market, *not nonunion-made material, but materials made outside of Chicago.*" Had the proof supported this promise, the case would have been similar to and controlled by the Boyle Case, 259 F. 803, 170 C. C. A. 603. However, the government failed to show that the real agreement was not to eliminate "nonunion-made material, but materials made outside of Chicago."

Nonunion-made goods were made in Illinois, as well as outside of Illinois. Union-made millwork was also produced outside of Illinois, as well as in the state. In other words, demand for millwork in Chicago could be supplied from all parts of the United States. Local manufacturers and those situated in Illinois, but outside of Chicago, could supply the millwork, as well as the factories of Wisconsin, Michigan, and other states. It was a matter of choice whether these factories employed nonunion or union labor. The agreement which the defendants entered into merely dealt with millwork which was the product of nonunion labor. It mattered not where the millwork was produced, whether in or outside of Illinois, if it bore the union label. The restriction was not against the shipment of millwork into Illinois. It was against nonunion-made millwork produced in or out of Illinois.

We find no evidence which would support a finding that the agreement embodied in article 3 of section 3 was not the real agreement of the parties. Wherefore we conclude there is a fatal variance, and the evidence does not sustain the indictment.

The judgment is reversed, and the cause remanded for further proceedings.

PAGE, Circuit Judge. I concur in the reversal.