## BRIMS et al. v. UNITED STATES.

Circuit Court of Appeals, Seventh Circuit.
October 22, 1927.

No. 3436.

**1. Criminal law ⬤⇒829(1)—Trial judge has right to prepare his own instructions applicable to issues.**

It is the right of a trial judge to make his own outline of the issues and to prepare his own statement of the law applicable thereto, and when such instructions adequately define the issues and correctly state the law they are to be preferred over a charge containing a collection of abstract principles unrelated to each other, selected from decided cases, and refusal of such instructions is not error, though each may contain a correct statement of the law in the abstract.

**2. Conspiracy ⬤⇒48—Instruction as to proof of intent in prosecution for criminal conspiracy, held not improper.**

In a prosecution for conspiracy to restrain interstate commerce, in violation of Sherman Anti-Trust Act (15 USCA § 1 et seq.), an instruction which told the jury that, if a defendant "purposely engaging in a conspiracy alleged and the necessary and direct result of such conspiracy was to materially restrain interstate commerce in the material described, he is legally chargeable with intending that result, and cannot be heard to say the contrary," *held* not error.

**3. Criminal law ⬤⇒512—Charge of collusion between prosecution and one defendant testifying held unsupported by record.**

Claim by counsel for plaintiffs in error of collusion between the prosecution, the court, and one defendant, pursuant to which such defendant colored his testimony in return for a promise of immunity, *held* unsupported by the record, which further failed to show that the testimony of such defendant was in any respect untrue.

In error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Criminal prosecution by the United States against William F. Brims and others. Judgment of conviction, and defendants bring error. Affirmed.

Hope Thompson and Robert Childs, both of Chicago, Ill., for plaintiffs in error.

R. H. Hardy, for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The opinions of this court and of the Supreme Court, disposing of certain questions presented by this writ of error, may be found in 6 F.(2d) 98, and in 272 U. S. 549, 47 S. Ct. 169, 71 L. Ed. 403. Reference is made to them for a general statement of the facts.

The decision of the Supreme Court, holding the evidence sufficient to support the conviction of the defendants of the offense charged in the indictment, and inferentially that there was no variance between proof and pleading, greatly limits the reviewable questions presented upon this second argument. In fact, it is difficult to escape the conclusion that the substantial assignments of error were all disposed of by the Supreme Court.

The undisposed-of contentions deal with the admission and exclusion of evidence, the court's charge to the jury, and the refusal of the court to give certain requested instructions. The conduct of the government in the prosecution of this case and the use by it

of a certain party defendant, to whom, it is charged, immunity was given, are likewise severaly criticized. It is not deemed necessary, however, to discuss each and every assignment of error. Those not specifically considered have been rejected, as being without merit and not of sufficient importance to require specific consideration.

[1] It is seriously argued that the court erred in refusing to give certain instructions bearing upon the question of defendants' intent and also erred in giving other instructions upon this same subject. Inasmuch as many of the other assignments deal with proposed instructions which the court refused to give, it seems appropriate that we make some observations respecting the privilege of the court to prepare its own instructions; that is, make its own analysis of the case and choose its own language to inform the jury of the law applicable. It not infrequently occurs that counsel in criminal cases (also to a certain extent in civil cases) take extracts from opinions of appellate courts and demand their submission to the jury.

There may be instances when these statements can be given by the trial judge. But, unfortunately, they frequently are not pertinent to the sharply controverted issues of the instant case, or are so worded as to convey to the jury an impression that the court favors one side. Frequently it is counsel's endeavor to thus convey the impression that the court favors his client, because of the argumentative character of the quotations.

Not only is the trial judge justified in refusing to adopt such language, even though the proposed instruction correctly states the law (and may be a quotation from an appellate court's opinion), but we approve of the practice, here followed, of the trial judge making his own outline of the issues and preparing his own statement of the law applicable thereto. When such instructions adequately define the issues and correctly state the law, they are to be preferred over a charge containing a collection of abstract principles, unrelated to each other, some of them irrelevant to the controverted issues, and others expressed more or less argumentatively.

These observations apply to the case under consideration. With great industry, counsel have searched the opinions of the Supreme Court to find quotations from which inferences favorable to their clients might be drawn. These quotations were submitted as proposed instructions. From our examination of the entire charge, we are convinced that the court, choosing its own language, most satisfactorily stated the positions of both sides. The instructions presented the issues and the law applicable as well as, or better than, would have been done had the court given the large number of proposed instructions covering innumerable questions, many of which had little to do with the controverted issues.

However, respecting the *intent* of defendants, there was no attempt to give, in substance or otherwise, that which the defendants requested. Several of the proposed instructions are here set forth:

"Under the penal provisions of the Sherman Act, upon which the indictment in this case is based, it devolves upon the prosecution to prove beyond a reasonable doubt that the defendants had a criminal intent, and criminal intent means an intent or purpose to do knowingly and willfully that which is condemned as wrong by the act."

"One of the essential elements to be proved by the government in this case, before you can find the defendants guilty, is that of criminal intent."

"This is not a civil case. It is a criminal prosecution. In such cases a criminal intention must accompany the act in order to constitute a crime. The act itself, while it may be the basis for the inference of a criminal intention by the jury, and is frequently irrefragable evidence of such intent, if unaccompanied by such criminal intent, is not crime."

"The gist of the crime of conspiracy consists of a corrupt agreement between two or more individuals to do an unlawful act either as a means or as an end. The criminal quality resides in the intention of the parties to the agreement construed in connection with the purpose contemplated."

"The mere fact that the conspiracy has for its object the doing of an act which may be unlawful, followed by the doing of such act, does not constitute the crime of conspiracy unless the jury finds that the parties were actuated by a criminal intent."

"The actual crime or wrongful purpose must accompany the agreement or combination, and, if that is absent, the crime of conspiracy has not been committed. It is alike the general rule of law, and the dictate of natural justice that to constitute guilt there must not only be a wrongful act but a criminal intention."

"The federation must be corrupt. If the motives of the confederates are not corrupt, no criminality can attach to the confederation.

"If you believe from the evidence that the defendants acted in good faith, in the honest belief that they were doing what they had a legal right to do, you must acquit, even though the effect of what defendants actually did was to restrain trade."

[2] The court charged the jury as follows: "Nor is it necessary for the government to prove that a defendant intended by his actions to violate the Anti-Trust Act or to restrain interstate commerce. If he purposely engaged in the conspiracy alleged, and the necessary and direct result of such conspiracy was to materially restrain interstate commerce in the material described, he is legally chargeable with intending that result, and cannot be heard to say the contrary." Was this error?

Defendants urge that, except in those cases where the offenses are statutory and mala prohibita, a criminal intent on the part of the wrongdoer is an essential ingredient of every crime. They also cite cases showing that courts have held such a criminal intent as essential to a successful prosecution under the Anti-Trust Law.

It is elementary to say that a criminal intent is ordinarily an essential element of a crime. It is not, however, with the pronouncement of the rule, but rather with its application, that difficulty arises. While an offense under the conspiracy statute requires proof of criminal intent, there are instances wherein the defendants cannot deny the existence of such an evil purpose. To illustrate, A, B, and C are charged with a conspiracy to rob the mails at a time and place named. Overt acts are appropriately set forth. Assume, further, that the proof consists of a written agreement setting forth in detail the parts which each conspirator is to play and providing for a division of the plunder after the robbery is completed. The agreement disclosed the conspiracy, *as well as the object of the conspiracy.* Could A, B, or C assert that he had no criminal intent? No! For where the undisputed facts which establish the conspiracy leave no doubt as to the *object* of the conspiracy, and such object is a violation of one of the laws of the United States, criminal intent appears. Not only does it appear, but it is conclusively established.

True, the government was required to prove the allegations of the indictment and every ingredient thereof. But when it proved the existence of the alleged conspiracy *the object of which was a violation of the Sherman Act* (15 USCA § 1 et seq.), the criminal intention of the conspirators was conclusively established. Upon such a record, the court could not shift its responsibility. Perhaps some courts have done so, but erroneously. They should not leave to juries questions of law that arise from the undisputed evidence. Nor could or should a court permit the jury to substitute for defendants' conduct a measure other than that fixed by the statute. Defendants' asserted good faith and innocent purpose were mere empty professions in the face of their established agreement, the undeniable effect and object of which was to unduly restrain competition and to impose a burden upon commerce among the states, thereby inflicting upon the public the injury which the Anti-Trust Act was designed to prevent.

In United States v. Patten, 226 U. S. 525, 33 S. Ct. 141, 57 L. Ed. 333, 44 L. R. A. (N. S.) 325, the court had much the same question before it. It was considering the sufficiency of an indictment which contained no specific allegation of defendant's intent to restrain trade or commerce between states. The court said:

"That there is no allegation of a specific intent to restrain such trade or commerce does not make against this conclusion, for, as is shown by prior decisions of this court, the conspirators must be held to have intended the necessary and direct consequences of their acts and cannot be heard to say the contrary. In other words, by purposely engaging in a conspiracy which necessarily and directly produces the result which the statute is designed to prevent, they are, in legal contemplation, chargeable with intending that result."

No other conclusion could be reached. Criminal intent involves a question of fact. When an unlawful agreement or conspiracy has for its object the violation of an act of Congress, the fact—the criminal intent; the unlawful purpose—is established. And no party should be permitted to deny or dispute the necessary consequence of his act. Nor should the contrary professions of a party be received to dispute the necessary and unavoidable consequences of his actions.

[3] The conduct of the government is criticized severely by counsel representing the union labor defendants. We quote from his brief:

"Defendant Doyle had made a secret bargain with the government. He had gone over his evidence with the government attorneys, and had been promised immunity for himself and the other contractor defendants, if he would testify, not openly as a government witness, but ostensibly as a defendant in his

own behalf. His attorney, who had arranged this secret scheme, sat in conference before and during the trial with other defense counsel. * * * When the government closed its case, no conspiracy had been proved; but there was an air of smug complacency on the part of government attorneys, which quite baffled those defense counsel who were not in the secret. Doyle took the stand. His attorney opened up the whole case with a perfunctory direct examination, and the government attorney proceeded, with leading questions on cross-examination, to fill the record with just about anything he wanted in it. The jury, of course, had no hint, then or later, that Doyle was, in fact, testifying for the government, and that he had been promised immunity. * * * The whole thing was a fraud on the jury, an injustice to other defendants, and a travesty of court procedure."

This statement, coming from one who had just left the district attorney's office, demands particular attention. Neither in this court on the first hearing nor in the Supreme Court was this serious charge preferred. It appears for the first time in the "Additional Brief for the Union Defendants upon the Remanding Order from the United States Supreme Court." There is no record reference to any testimony or proceedings that would support this criticism. There is no assignment of error and no adverse ruling during the trial that has been referred to that would support it. However in view of the strong language used and the character of the charges preferred we have examined the record carefully, only to find the charge to be wholly unsupported by the record.

Doyle's testimony covers some 35 pages, 6 pages covering his direct examination, 2 pages covering the cross-examination by the government. The balance represented testimony elicited by codefendants. Yet defendants say the "government attorney proceeded with leading questions on cross-examination to fill the record with just about anything he wanted in it." Not a single leading question appears. Not a single objection was made to any question or to any answer upon the government's cross-examination. There is absolutely nothing in the testimony itself that would indicate bias on the part of Doyle or untruthfulness in his statements. Not only does the testimony negative any charge of collusion or immunity, but the only direct testimony on the question was elicited upon cross-examination by counsel for the millmen defendants. Doyle stated, "I have no reason for shaping my testimony. * * * No one has told be that a recom-

mendation would be made to the court for a light punishment in the event my testimony proved satisfactory to the government and a conviction ensued." The witness admitted that after he had been indicted he went to the district attorney's office and fully stated the facts. There is no suggestion that he testified to anything other than the truth, either upon the direct or the cross examination. Mr. Doyle was a man 71 years of age and was president of the contractors' association in 1918. Previous to that he had been a director and a vice president. He was a member of the trade relations committee of his organization when this committee negotiated with the millmen respecting the unlawful agreement in question.

It appears that some question arose as to whether the contractors entered into this agreement readily and voluntarily, or whether they were coerced and subjected to severe duress before "signing up." Doubtless it was the favorable impression which the district judge obtained of these "contractor defendants" that led him to dispose of their cases as he did.

We cannot condemn too severely the action of counsel who made such serious charges, when the facts so utterly failed to support the charge.

Error is assigned because of the exclusion of certain documentary evidence offered by defendants. The document purported to be an opinion of a court in a somewhat analogous case. We are at an utter loss to understand upon what theory such evidence could have been received. Its real purpose was doubtless to confuse the jury as to the meaning and effect of the Sherman Anti-Trust Act. Good faith—belief that this decision justified the illegal combination—would have availed defendants naught. For reasons just stated, defendants could not be heard to say they did not intend the necessary and direct consequences of their action in thus agreeing to exclude nonunion made goods from entering Chicago buildings.

Error is also assigned because of the reception of evidence tending to show the existence of the conspiracy. In addition to proving the existence of an agreement to exclude nonunion made material, the evidence showed certain officers of the labor union extorted from builders moneys in varying amounts for allowing nonunion material to be installed. This court held in Boyle v. U. S. (C. C. A.) 259 F. 808, that such evidence was admissible. The observations there made are equally pertinent to the case at bar.

The judgment is affirmed.