HOTEL PHILLIPS, INC., d/b/a Phillips Hotel, Hotel President, Inc., d/b/a President Hotel, Trianon Hotel Company, d/b/a Muehlebach Hotel and Towers, and Delno D. Spainhower, d/b/a Airline Barber Shop, Kansas City Municipal Airport, Plaintiffs,

v.

JOURNEYMEN BARBERS, HAIRDRESSERS, COSMETOLOGISTS AND PROPRIETORS INTERNATIONAL UNION OF AMERICA, and Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America, Local No. 192, Defendants.

No. 13212.

United States District Court W. D. Missouri, W. D.

July 21, 1961.

Harry L. Browne, Donald W. Giffin, James R. Willard, Kansas City, Mo., for plaintiffs.

Stephen B. Millin, Donald E. Willson, Popham, Thompson, Popham, Trusty & Conway, Kansas City, Mo., for defendants.

RIDGE, Circuit Judge.

In this private Sherman Act case (15 U.S.C.A. §§ 1–15) three (3) local Kansas City, Missouri hotels and the individual lessee-operator of the barber shop at the Kansas City, Missouri Municipal Airport seek treble damages and injunctive relief against the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America and Kansas City, Missouri Local No. 192 of said International Union, for alleged conspiratorial conduct and activities charged to be in violation of Section 1 of the Act. (15 U.S.C.A. § 1.) Though not named as parties herein, plaintiffs claim that Kansas City Local 185 of J.B.H.H. & P. International Union; Associated Master Barbers, a national voluntary association of employer barbers; and Kansas City Chapter of Associated Master Barbers, an unincorporated association, some members of which are themselves barbers, are co-conspirators to the conduct and activities indited by plaintiffs.

The gist of the instant claim is that, by agreement and conspiracy between the defendant Unions and the Master Barbers Associations, all barber shops in the Greater Kansas City Metropolitan Area which employ members of Local 192 and Local 185, supra, charge a uniform price for haircuts, fixed as to the amount and date; that all barber shops in the area are restricted to a 5-day work week, either Tuesday through Saturday or Monday through Friday, so that no shop employing members of such Local Unions is allowed to operate or remain open for more than five (5) days of any one week. Such conduct and policy is alleged to be in violation of Section 1 of the Sherman Act, supra, because defendants and their co-conspirators for the past four (4) years have thereby:

(1) Fixed the minimum price for which haircuts and other services of the barbering industry may be sold in the Metropolitan Kansas City Area;

(2) Refused to allow members of their organization to sell services of, or to be employed in, the barbering industry in any barber shop which remains open for more than five (5) days a week;

(3) Arbitrarily decided which barber shops may remain open for business in the Metropolitan Kansas City Area on Monday through Friday and which shops may re-

main open for business Tuesday through Saturday, and have conspired and agreed with each other to prevent plaintiffs from opening their barber shops for business during six (6) days of each week when the public has need for such service;

(4) Conspired and agreed with each other to require plaintiffs to shut their barber shops on Mondays;

(5) Insisted that all collective bargaining agreements entered into between Local 192 and Local 185, and members of Associated and Kansas City Associated Master Barbers and plaintiffs * * * contain provisions prohibiting the sale of service of the barbering industry at prices below those "fixed" and prohibiting dates of operation other than as prescribed above; and

(6) They have intimidated the individual owner of Airline Barber Shop with the threat of using political power of Local 192 to cause the City of Kansas City, Missouri, not to renew his lease in order to secure that plaintiff's compliance with the above demands; and have used officials, representatives and members of Local 192 and Local 185 "as enforcing agents of the conspiracy" charged.

The injury and damage resulting from such alleged conspiratorial activities and conduct is alleged to be that the (shear-shave) consuming public has been denied the benefits of competitively established prices, and in some shops the consuming public has been prevented from purchasing barbering service at any time during Saturdays; and in others, including plaintiffs, have been denied the right to competitively establishing their own prices for the sale of services in their own barber shops and they have been denied the right to operate their barber shops during Mondays. As a consequence, plaintiffs claim lost profits on sales of barbering industry to interstate travelers and others * * * lost profits from prospective guests who would have patronized their hotels except for their inability to provide said guests with services of the barbering industry during hours and on the days prohibited by defendants' conspiracy.

The interstate character of the commerce affected by the conspiracy charged is alleged in the complaint thus:

"10. The City of Kansas City, Missouri is located upon the border of the States of Kansas and Missouri and in the heart of the Kansas City Metropolitan Area. It is surrounded by a metropolitan population which extends into Jackson, Clay and Platte Counties in Missouri and Wyandotte and Johnson Counties in Kansas (hereinafter referred to as 'Kansas City Metropolitan Area'). A substantial number of this population works in one state and lives in the other, or works in one state and shops in the other, or lives in one state and shops in the other. Barber services are purchased largely in the place where the customer works, lives or shops, but customer habits vary as among which of these places barber services will be purchased and a substantial number of barber customers in the Kansas City Metropolitan Area are in interstate transit from their homes to their employment or to their shopping centers while purchasing said services.

"11. The greatest volume of the guests of the hotels are people from outside the State of Missouri and a substantial number of said guests are interstate travelers who are traveling to points beyond Kansas City, Missouri, and use the barber shops of their hotels while in transit to points beyond said City.

"12. The hotels compete with each other and with other hotels in other cities throughout the United

States for the location of national and regional conventions and meetings of employee, business, religious, educational, political and other groups at their respective hotels and in Kansas City, Missouri. The ability of the hotels to effectively compete in this area is largely dependent upon the services and facilities which they have to offer to their guests.

"13. Plaintiff Airline Barber Shop sells barbering services to in transit airline travelers during layovers and other delays in their journeys and to others. The majority of sales of plaintiff Airline Barber Shop is to interstate travelers.

"14. The offenses * * * complained of were committed and/or threatened to be committed by defendants, their co-conspirators and others as a part of an interstate conspiracy to restrain competition in the sale of barbering services throughout the Kansas City Metropolitan Area and elsewhere within the States of Missouri and Kansas."

Defendant International Union has filed motion to quash service of summons made on it, on the grounds that Robert H. Lake, Jr., Secretary-Treasurer for the allegedly autonomous Local 192, is not an "agent authorized by appointment or by law to receive service of process" as provided in Rule 4(d)(3), F.R.Civ.P. Alternatively thereto, the International Union prays that plaintiffs' complaint be dismissed because the same "fails to state a claim against defendants upon which relief can be granted; because this Court lacks jurisdiction over the subject matter of plaintiffs' complaint; and lack of jurisdiction because there is no diversity of citizenship" between the parties. Local Union No. 192 has also filed a separate motion to dismiss this complaint on the same grounds. Because it is so patently revealed from the allegations of the complaint that jurisdiction of this Court over the subject matter of the instant action can only be legally premised, if premised at all, in Sections 4 and 16 of the Clayton Act (15 U.S.C.A. §§ 15 & 26) and that the facts alleged do not establish any anti-trust violation falling within the ambit of Section 1 of the Sherman Act (15 U.S.C.A.) as judicially construed by controlling authority, we pretermit any ruling as to International's motion to quash. Instead, we proceed to rule the separate motions to dismiss, and pass over consideration of the question of Lake's agency for International, and the claim of autonomy of the Local Union of which he is Treasurer, as raised in respect to the motion to quash.

In so doing, we are mindful that in ruling the motions to dismiss, consideration is to be given to all facts well pleaded in the complaint tending to establish the anti-trust violation here charged, and the commerce affected thereby, and that factual allegations respecting the same are to be accepted as being true. However, conclusions deduced from the facts pleaded as to the terminal effect of the violation charged, and the impact thereof in restraint of trade or commerce among the several states, is a matter to be sounded out by this Court in determining whether a valid claim of Sherman Act violation is shown to legally exist as claimed by plaintiffs.

In pondering that matter, it can be categorically stated, without citation of controlling authorities, that the applicable statute supra does not apply where the conspiracy charged and the trade or commerce affected thereby is purely intrastate. Neither does it apply where the trade or commerce affected is interstate, unless the effect thereon is direct; not merely indirect, remote and inconsequential; or the claim pleaded is factually unsubstantial. In such event, jurisdiction is wanting, absent diversity of citizenship which concededly does not here exist. United States v. Patten, 226 U.S. 525, 542, 33 S.Ct. 141, 57 L. Ed. 333; Apex Hosiery Co. v. Leader, 1939, 310 U.S. 469, 60 S.Ct. 982, 84

L.Ed. 1311; Levering & Garrigues Co. v. Morrin, 1932, 289 U.S. 103, 53 S. Ct. 549, 77 L.Ed. 1062. For it is the stream of commerce flowing across the states and between them that is regulated by the Sherman Act. To prevent direct interference with, or disturbance of, that flow alone is the purpose of the Act and it does not undertake to regulate articles or persons which have not entered that stream, or, having entered it, have passed out of it. (cf.) United States v. Yellow Cab Company, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010.

■ By memorandum brief, plaintiffs in the case at bar undertake to demonstrate impact of the conspiracy here charged on interstate commerce, by asserting:

"By closing downtown barber shops on Monday, defendants are inconveniencing interstate travelers *at* the airport and *at* the downtown hotels, and diverting barbering services *in* Missouri to the state of the travelers' next destination. Even if the interstate trade affected is small, compared with the effect on local trade, the interstate aspects of this monopolistic practice are concentrated on these plaintiffs; and it will be proved that the interstate trade diverted from them by the conspiracy is very substantial."

Further, that:

"Plaintiffs are serving a specialized segment of the metropolitan economy, the interstate traveler. * * * Defendants' conspiracy is directed against and primarily affects plaintiffs' customers and guests who have or will travel in interstate commerce before, or after, using plaintiffs' local hotel facilities."

Plaintiffs premise this latter assertion in the proposition:

"That the operation of a barber shop is an essential, integral and vital part of the operation of a major hotel in a major metropolitan city. Without a full line of service such as barbering facilities a hotel of this type is not able to compete in this highly competitive industry. By depriving the hotels of their barber shop facilities, defendants have directly affected their interstate business."

Such assertions, together with allegations of the complaint supra are mere conclusions, yet most convincing that all that is here involved are activities which are wholly intrastate in character and any restraint upon interstate commerce, if any, which plaintiffs assert, is so indirect, remote and inconsequential as to be without effect and wholly foreign to any interest or purpose to conspire to restrain interstate commerce. Thus a decision here simmers down to the narrow question as to whether the price-fixing agreement for barber service of which plaintiffs complain, has or could have any appreciable effect upon the flow of persons moving in interstate commerce; and, whether the closing of local barber shops in the Metropolitan Area of Kansas City, on any given day of the week, by a conspiracy between Journeymen and Master Barbers carries the anti-trust violation here charged, within the ambit of Section 1, supra. Speculation and conjecture as to how such indited agreements could reasonably affect interstate commerce, directly or substantially, is not enough, absent a factual premise therefor.

■ Concededly, there are cases which hold that restraints on local commerce are illegal if their result has a substantial and adverse effect on interstate commerce. United States v. Employing Plasterers' Association, 347 U. S. 186, 74 S.Ct. 452, 98 L.Ed. 618; Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939; United States v. Women's Sportswear Manufacturers Association, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805. But all cases so relied upon by plaintiffs falling within that category re-

late to commercial transactions and the marketing of goods which customarily and regularly move in interstate commerce. No cases cited, and personal research has produced none, which involves a combination to fix prices and limit days for performance of personal services which are performed in local establishment operations, and are of such a personal character to persons not presently using any means directly or indirectly touching transportation or the flow of goods in interstate commerce. Neither the facts in this case nor any other authority known, supports the theory here advanced, namely, that local activities are illegal under the Sherman Act because they concern persons who have previously moved in interstate commerce or who, after receiving a local personal service, may thereafter move in interstate commerce.

The difference between the instant situation and those involved in cases on which plaintiffs rely, is best illustrated by United States v. Yellow Cab Company, supra, where interstate commerce toward which the conspiracy there charged, arose out of these facts (332 U.S. loc. cit. 230, 67 S.Ct. loc. cit. 1566.) :

"Many persons * * * embark upon interstate journeys from their homes, offices and hotels in Chicago by using taxicabs to transport themselves and their luggage to railroad stations in Chicago. Conversely, in making journeys from other states to homes, offices and hotels in Chicago, many persons are said to complete such trips by using taxicabs to transport themselves and their luggage from railroad stations in Chicago to said homes, offices and hotels. Such transportation * * * is intermingled with the admittedly local operations of the Chicago taxicabs."

In the Yellow Cab case, the Supreme Court held, "that such transportation is too unrelated to interstate commerce to constitute a part thereof within the meaning of the Sherman Act" (332 U.S. loc. cit. 230, 67 S.Ct. loc. cit. 1567.)

notwithstanding the fact that the passengers transported might be considered as having started as interstate travelers when they boarded a taxicab to go to the railroad station and their interstate journey ended when they alighted from a conveyance near their home after interstate travel. If the taxicab transportation considered in the Yellow Cab case supra, was "too unrelated to interstate commerce to constitute a part thereof within the meaning of the Sherman Act," absent any contractual or other arrangement with interstate carriers, it is not logically sound to strive and reason that *barber service* performed in a local barber shop, at a time when a person is wholly quiescent and totally disassociated from transportation and interstate travel, has even the remotest relation to interstate commerce.

■■ The price-fixing charge here made by plaintiffs is not a situation as to which the plaintiffs can premise any Sherman Act violation, as here attempted. Assuming such price-fixing to be illegal *per se,* the patrons of plaintiffs' shops are the persons who are affected and have been damaged thereby. The only inference to be gleaned from the instant complaint is that on the days plaintiffs' barber shops have been open for business during the past four (4) years, the prices charged to customers for haircuts and other services performed therein "have been uniform as to amount and dates * * * throughout the Kansas City Metropolitan Area." (Compl., par. 15.) Plaintiffs having uniformly exacted such price-fixed charge and profited thereby, are in no position to maintain a private Sherman Act case premised in "price-fixing". The doctrine of "clean hands" and *particeps criminis* need not be raised by litigants, but can be raised by the Court of its own motion. Maltz v. Sax, 7 Cir., 134 F.2d 2.

■ In a private Sherman Act case a plaintiff's damages must be different than that suffered by the general public, i. e. it must be special to plaintiff. United States v. Cooper Corp., 1940, 312 U.S.

600, 61 S.Ct. 742, 85 L.Ed. 1071. (cf.) Nalle v. Oyster, 230 U.S. 165, 33 S.Ct. 1043, 57 L.Ed. 1439; Maltz v. Sax, supra. If the pleadings in a private Sherman Act case do not contain allegations of acts from which it may be inferred that a legal right of plaintiff has been involved and he has been personally damaged thereby, it is unnecessary to consider other conduct, however much it may contravene some other provision of the law.

Plaintiffs' contention that they "are serving a specialized segment of the metropolitan economy, the interstate traveler," and that their "activities are primarily interstate," therefore the closing of downtown barber shops on Monday has a direct effect upon, and interruption of, interstate travel, is so specious as to warrant no serious consideration. The sweep of the Fair Labor Standards Act respecting activities in interstate commerce is much broader than that of Section 1 of the Sherman Act, 29 U.S.C.A. § 152(7)–§ 160. "Hotels" are specifically exempt from both the minimum wage and overtime provisions of the F. L. S. A., as amended (Cf. Publ. Law 87–30, Sec. 9, 87th Cong., May 5, 1961; and Report 145, U. S. Senate, 87th Cong., 1st Sess., 29 U.S.C.A. § 213), and classified as retail and service establishment; as are "Barber Shops" by interpretative bulletin. (29 C.F.R., Part 779.-9.) We may take judicial notice of such matter, and by taking cognizance of the nature of interstate commerce falling within the ambit of Section 1 of the Sherman Act, may a priori determine that each of the plaintiff's businesses are local retail establishments not directly engaged in interstate commerce. When a traveler stops at a hotel or barber shop at an interstate terminal to get his hair cut or a shave, he lapses from interstate commerce as measured by Sherman Act standards. The services so rendered to such traveler are as local to him as is the hotel or barber shop in which they are performed. What service he receives during any such self-determined stop in his journey, he leaves behind, and the service rendered to him does not in any fashion propel him on his journey, such as the services of a "red-cap" might do, as considered in Williams v. Jacksonville Terminal Company, 1942, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914.

Assuming a conspiracy as charged by plaintiffs to exist, interstate commerce within the purview of the Sherman Act is not shown to be directly or indirectly affected thereby. Hence, in the factual situation of the instant case, no right of action under Section 1 of the Sherman Act is established. (cf.) Adams Dairy Company v. St. Louis Dairy Company, 8 Cir., 260 F.2d 46. That being so, this Court has no jurisdiction of the subject matter thereof, and the motions to dismiss should be sustained.

In so ruling, no expression as to "(t)he wisdom or unwisdom, the rightness or wrongness, the selfishness or unselfishness of the end of which the particular union activities are the means" (United States v. Hutcheson, 312 U.S. 219, 222, 61 S.Ct. 463, 466, 85 L.Ed. 788) is intended. All that is encompassed in the instant ruling is that jurisdiction cannot be here premised in Section 1 of the Sherman Act supra, by any judicial consideration of the factual situation here presented.

The separate motions of the defendants to dismiss this action are by the Court sustained. It Is So Ordered.